**John C. BENJAMIN, Petitioner,**

v.

**BUREAU OF ALCOHOL, TOBACCO, AND FIREARMS, Secretary of the Treasury, and the United States of America, Respondents.**

Civ. No. 90–940–FR.

United States District Court,
D. Oregon.

July 29, 1991.

Nick Albrecht, Portland, Or., for petitioner.

Charles H. Turner, U.S. Atty., Robert B. Ross, Asst. U.S. Atty., Portland, Or., for respondents.

## OPINION

FRYE, Judge:

The matter before the court is the *de novo* review of the decision of the Bureau of Alcohol, Tobacco and Firearms (the BATF) to revoke the license of plaintiff, John C. Benjamin, to manufacture machine guns. The issue in this case is whether Benjamin willfully refused to allow inspectors from the BATF to have access to his premises on June 1, July 6 and July 7, 1989, in violation of 18 U.S.C. § 923(g)(1)(B)(ii) and 27 C.F.R. § 178.23(b)(2).

## UNDISPUTED FACTS

Benjamin was granted a license to manufacture machine guns by the BATF in 1981. Benjamin was authorized to conduct the activities permitted by the license in and from the shop (garage) located adjacent to the home of his parents at 1537 N.E. 141st Street, Portland, Oregon.

The local office of the BATF gave Benjamin notice of its intent to conduct an inspection in the spring of 1989, and set June 1, 1989 as the date for the inspection.

On June 1, 1989, Inspector Redmond and Inspector Nelson of the BATF went to 1537 N.E. 141st Street at 9:00 a.m. to conduct the inspection. The inspectors rang the doorbell at the home of Benjamin's parents. The shop has an entrance and a doorbell separate from the entrance and doorbell of the home of Benjamin's parents.

Ellen Benjamin, the mother of John Benjamin, answered the door. Ellen Benjamin told the inspectors that John Benjamin was not there; that the inspectors would not be allowed in her home; and that they were to wait for John Benjamin outside.

About five minutes later, John Benjamin arrived in a pickup truck with the inventory of firearms. At this time, Ellen Benjamin came out of her home and told the inspectors that they would not be allowed in her home; that agents had terrorized her in the past; and that all inspections would be performed outdoors. John Benjamin did not interfere with his mother's commands, and the inspectors did not make a verbal demand to enter either the shop or the home believing a demand to be a futile gesture. Instead, the inspectors conducted the inventory in the driveway.[1]

Following the inspection of June 1, 1989, Ellen Benjamin placed a telephone call to the Area Supervisor of the BATF complaining about the inspection. John Benjamin picked up the telephone and told the Area Supervisor that he would not permit inspectors from the BATF to enter the home of his parents because of their experiences of the year before. The Area Supervisor informed Benjamin that he was obligated to allow personnel from the BATF access to the licensed premises for the purposes of inspection.

On July 6, 1989, Inspector Redmond and Inspector Rutherford went to 1537 N.E. 141st Street to take inventory of the twenty-six firearms that were not there during the inspection of June 1, 1989 and to examine Benjamin's record keeping. Benjamin met the inspectors in the driveway and produced the firearms. Benjamin did not have the records. The inspectors did not demand to inspect the licensed premises. Benjamin told the inspectors that he would make the records available the next day. Arrangements were made to meet again on July 7, 1989.

On July 7, 1989, Inspector Redmond and Inspector Rutherford returned to 1537 N.E. 141st Street. Ellen Benjamin and John Benjamin came out of the house and met the inspectors in the driveway. John Benjamin provided the inspectors with the records. When Inspector Redmond requested access to the licensed premises, Ellen Benjamin stated that John Benjamin was a renter; that the house was her home; and that she denied him access to the premises. Inspector Rutherford asked John Benjamin, "Then, are you refusing access to the licensed premises," and John Benjamin responded, "I do my work here. No one gets into the house," Record at 227,

---

1. Benjamin testified that the inspectors agreed that this arrangement for conducting the inspec- tion was satisfactory.

pointing to the back end of his truck. Record at 226. Inspector Rutherford asked Benjamin whether he realized that it was a condition of his license that the inspectors be able to inspect the licensed premises. Benjamin answered, "This is where I do my business. No one gets into the house." Record at 227.

On July 7, 1989, Inspector Bernard Kipp, Special Inspector for the BATF, received a telephone call from Ellen Benjamin in which Ellen Benjamin told Inspector Kipp that she could control who could enter the property because she was the owner of the property and that she did not want people from the BATF in her residence. Ellen Benjamin also told Inspector Kipp that her son conducted business from the driveway of her premises and that that was the only portion of her premises that would be available for inspection. John Benjamin then picked up the telephone, and Inspector Kipp told John Benjamin that one of the conditions of the license was that the licensed premises be open to access by the BATF. John Benjamin responded that there had been a problem the year before when some agents brought loaded guns into the residence of his mother, and she did not like it. John Benjamin told Inspector Kipp that was why Ellen Benjamin was restricting access, and that he would only meet with the people from the BATF in the driveway of his licensed premises.

At the administrative hearing, John Benjamin testified that he thought the inspectors wanted access to his mother's house, and not the shop attached to the house. Benjamin testified that if the inspectors had asked to see the inside of the shop, he would have let them. Benjamin testified that when the inspectors used the term "licensed premises," he thought they meant the house, and he was under the assumption that the inspectors wanted to search the house, which was the home of his mother.

At the hearing, Ellen Benjamin testified that she objected only to the inspectors going into the house and that she never objected to anyone going into the garage.

On March 14, 1990, the initial notice of revocation of license was issued and served on the licensee, John Benjamin. He filed a timely request for a hearing. A hearing was held on May 8, 1990. The post hearing final notice of revocation was issued on August 28, 1990. The Regional Director concluded that "[o]n or about June 1, 1989, July 6, 1989 and July 7, 1989, Mr. John C. Benjamin willfully violated 18 U.S.C. § 923(g)(1)(B)(ii) and 27 C.F.R. § 178.-23(b)(2) by refusing to allow ATF inspectors to enter his licensed business premises." Record at 009.

John Benjamin filed this action on September 11, 1990, and the revocation was stayed pending resolution of this case. On December 26, 1990, the government filed the administrative record, consisting of the transcript of the hearing, exhibits submitted by the parties, and the findings and conclusions of the Regional Director.

## STANDARD OF REVIEW

Benjamin seeks review of the revocation under 18 U.S.C. § 923(f)(3), which states:

If after a hearing held under paragraph (2) the Secretary decides not to reverse his decision to deny an application or revoke a license, the Secretary shall give notice of his decision to the aggrieved party. The aggrieved party may at any time within sixty days after the date notice was given under this paragraph file a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such denial or revocation. In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing held under paragraph (2). If the court decides that the Secretary was not authorized to deny the application or to revoke the license, the court shall order the Secretary to take such action as may be necessary to comply with the judgment of the court.

While 18 U.S.C. § 923(f)(3) provides that the court may consider evidence not part of

the administrative record, there is no requirement that the court conduct an additional factual hearing. The court may review the record and any additional matters submitted by the parties. *Perri v. Department of Treasury*, 637 F.2d 1332, 1335 (9th Cir.1981).

In this case, the parties have submitted to the court the administrative record and legal argument.

## CONTENTIONS OF THE PARTIES

Benjamin contends that the finding proposed by the BATF that he willfully and knowingly denied access to the premises licensed by the BATF on June 1, 1989 and July 6, 1989 should be rejected by this court on the grounds that the testimony of the inspectors from the BATF at the administrative hearing shows that the inspectors did not make a formal demand for entry to the premises which were licensed on these days.

Benjamin admits that the question of entry on July 7, 1989 is more difficult because entry was requested. Benjamin asserts that his refusal on July 7, 1989 was a refusal to allow entry to his mother's residence, and that he did not refuse access to the shop which is the licensed premises. Benjamin states that there was never any problem with the inspectors entering the licensed shop, and that the inspectors had already prepared the citation for refusing entry in addition to preparing a citation for three other charges before they came to the premises on July 7, 1989.

Benjamin contends that the testimony in the transcript demonstrates that the inspectors were seeking to enter the home of his mother and not the adjacent shop, and that his refusal was not a violation of the license requirements.

Benjamin contends that Inspector Redmond pursued the revocation because she was angry with Ellen Benjamin, and that the hearing officer is biased.

The government concedes that a mistake by Benjamin as to the intentions of the inspectors would negate the element of willfullness required by 18 U.S.C. § 923(e), but contends that Benjamin knew that the inspectors wanted access to the shop, which was the licensed premises, and willfully denied the inspectors access to the shop.

The government argues that Benjamin's claim that there was a misunderstanding is not credible and should be rejected by this court as it was rejected by the hearing officer. The government contends that it has proved by a preponderance of the evidence that Benjamin understood the request of the inspector for access to the licensed premises and rejected that request.

The government asserts that Benjamin refused requests for access to the licensed premises on June 1, 1989 and July 6, 1989, even though no one asked to enter. The government explains that Benjamin was present when his mother said that they would have to conduct the inspection outside rather than go inside her house, and that Benjamin did not object to his mother's statements. The government asserts that the court could conclude that because Benjamin's mother would not allow inspectors from the BATF into her house, Benjamin likewise would not allow them into his shop.

The government asserts that the revocation of the license was not based upon any personal aminus between Inspector Redmond and Ellen Benjamin, and that the hearing officer was not biased.

## APPLICABLE LAW

18 U.S.C. § 923(g)(1)(B) provides that "[t]he Secretary may inspect or examine the inventory and records of a ... licensed manufacturer ... without such reasonable cause or warrant ... (ii) for ensuring compliance with the record keeping requirements of this chapter not more than once during any twelve-month period." A single willful violation of this statute is a sufficient basis to revoke Benjamin's license.

In reviewing the facts, this court must determine whether the evidence establishes by a preponderance of the evidence that Benjamin willfully denied the inspectors access to the premises which

were licensed. Because willfulness is required, the evidence must show that Benjamin actually knew the inspectors wanted access to his shop and denied them such access. The subjective belief of Benjamin, even if unreasonable, determines the issue of willfulness. *See Cheek v. United States,* —— U.S. ——, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). A good faith misunderstanding of the law or a good faith belief that one is not violating the law negates the element of willfullness, whether or not the claimed belief or misunderstanding is objectively reasonable. *Id.,* 111 S.Ct. at 611.

### ANALYSIS AND RULING

Benjamin was authorized to manufacture machine guns out of his shop or garage adjacent to the home of his parents at 1537 N.E. 141st Street, Portland, Oregon. The regulations of the BATF specifically exclude private dwellings from the definition of licensed premises. 27 C.F.R. § 178.11 defines "licensed premises" as "[t]he property on which the manufacturing ... of ... firearms is or will be conducted" and states that "[a] private dwelling, no part of which is open to the public, shall not be recognized as coming within this term." There is no question that pursuant to the applicable laws and regulations, the inspectors were authorized to inspect the shop, and it is equally clear that they were not authorized to inspect the home of Benjamin's parents.

■ The inspectors from the BATF did not ask for access to the licensed premises on June 1, 1989 and July 6, 1989. The court declines to find that Benjamin willfully denied the inspectors access to the licensed premises when the inspectors did not clearly request such access. The court declines to infer from the statements of Benjamin's mother and the silence of Benjamin that he willfully denied the inspectors access to the licensed premises.

■ However, on July 7, 1989, the inspectors requested access to the licensed premises, and Benjamin denied them access to the licensed premises. Inspector Rutherford, Compliance Operations, ATF Portland, testified:

I asked then for access to the licensed premises. I requested access to the licensed premises, and I was told, "This is where I do all of my business." And I said, "No"—

Q What do you mean by "this"?

A [Rutherford] When he said "this," he pointed to the back of the truck, to the back end of the truck. He said, "This is where I do business, in the driveway, out of my truck." I said, "No, this is not the licensed premises, and I pointed to the house, and I said, "That is the listed licensed premises." He stated that, "I am a renter here. My mother owns the house. I am simply a renter. And she does not want access to the house, and you cannot—no one comes into this house. And I have a fear of something being stolen." I said, "Surely you don't think that I'm going to steal anything." And he said, "Well, I don't know, but no one gets into this place."

I said, "Then, are you refusing access to the licensed premises?" He said, "I do my work here. No one gets into the house." And I said, "Do you realize that it's a condition of your license that we have the right, as inspectors, to inspect the licensed premises?" He said, "This is where I do my business. No one gets into the house."

At that time, I figured that that was—that was a complete denial of access, and I wasn't about to push the issue. He had denied, after I made a formal request.

Record at 226–27. Inspector Redmond, also present on that day, describes the events in the same manner.

John Benjamin testified that the inspectors "never asked me permission to enter and look in my shop." Record at 357. Benjamin testified, "I don't ever remember saying, 'You can't enter the building.' I may have said, 'You can't go into her house' or 'into her home.'" Record at 384. But, later in the hearing, Benjamin testified:

Q And your testimony is that you did not understand what the term "licensed

premises" meant? You were confused about what the term "licensed premises" basically was? You couldn't comprehend what that term meant?

A [Benjamin] "Licensed premises." I'm not an attorney and in that—in legal terms, that could mean something other than residence. I thought it meant the shop. And I've always conducted business in my shop, and I've been told—

Q All right. So you interpreted it to mean the shop, so when the inspectors repeatedly asked you for access to your licensed premises—

A [Benjamin] Well, now, just a minute here. Hear me out.

When they said "licensed premises," the reason they weren't—they never—hadn't conducted inspection in the shop is, the truck and the cargo and the people simply would not fit in there. It's physically impossible to drive the truck in there, have four people stand in there, and unload it. The truck won't fit in there, period. And being as that container weighed 600 or 700 pounds, by their own admission, it was impossible to lift it off. They had no other option other than inspect this thing on the driveway.

Record at 405.

Benjamin stated on his application for a firearms license that his business was located in the "[s]hop attached to residence." Benjamin knew that the inspectors from the BATF were entitled to inspect his licensed premises, and Benjamin knew that the shop attached to the residence constituted the licensed premises.

This court finds the testimony of Inspector Rutherford credible when he describes the events of July 7, 1989. Inspector Rutherford testified that he formally requested entry into the "licensed premises;" Benjamin understood, as he testified at the hearing, that the licensed premises was the shop attached to the house. Benjamin would not permit the inspectors to inspect any portion of the property beyond the driveway. Therefore, the evidence establishes that Benjamin willfully denied the inspectors access to the licensed premises.

There is no evidence in this case that the BATF proceeded with this petition for revocation out of animosity for Benjamin or his mother. John F. Daffron, Area Supervisor for Compliance in Portland, Oregon, explained the reason that he made the recommendation to the Regional Office that the action to terminate Benjamin's license be initiated:

I made the recommendation on—on, really, two main reasons, and the first being that, in my opinion, the situation that we encountered did not allow us to perform the kind of inspections that the law and regulations—that the Congress contemplated in the scheme that's provided by the regulations, which was really a site check.

When we were all through, I don't feel that the results of our inspections, certainly from our standpoint, are reliable. We have a situation where we were not allowed access to the licensed premises, where we had to visit three different times to finish the inspection, where we'd done an inventory and saw only part of the inventory, and then came back a second time. I would draw an analogy to a bank examiner's examination, and counting half the cash one day and coming back another day and counting the other half.

I'm not suggesting there was anything wrong. We really can't say, with any confidence, that we know where those firearms were, in whose possession they were, whether they were in existence. We really don't know.

The—the scheme that's intended by the regulations is a mix of things. It is not simply one part of it. It is not simply licensing, it is not simply record-keeping; it is all of these things together. A license is issued to a particular premises. The regulations are very clear. Each premises has a license. Each premises is required to have record-keeping and so forth. The intent is that, at any point in time, we be able to make a visit, unannounced if we choose, arrive at the premises, announce ourselves, identify ourselves, and at that point, do an inventory

and compare it to the records and verify that the records are correct.

We clearly cannot do that with Mr. Benjamin, and that's the situation we're facing. If we accept it as it is, then we're accepting an inability to do our job. The other reason is—is the administrative burden. As has been testified, we spent an inordinate amount of time on this. If we spend as much time on this inspection—or, on all inspections as this one, we'd come nowhere near completing all that we had to do.

Record at 257–58.

### CONCLUSION

On July 7, 1989, the inspectors from the BATF requested access to inspect the licensed premises of John C. Benjamin. Benjamin knew that the shop attached to the residence of his parents was the licensed premises. Benjamin denied the inspectors access to any portion of the property beyond the driveway. Benjamin knew that the inspectors had a right to inspect the licensed premises as they requested and that refusing such an inspection was grounds for initiation of proceedings to revoke his license.

The license revocation process was initiated by the BATF for proper reasons. Benjamin received all of the procedural rights to which he was entitled. The Regional Director of the BATF found that Benjamin willfully refused access to the inspectors from the BATF, and therefore revoked his license.

This court has reviewed *de novo* all of the evidence presented in this record and concludes that Benjamin willfully refused the inspectors from the BATF access to his licensed premises on July 7, 1989 in violation of 18 U.S.C. § 923(g)(1)(B)(ii) and 27 C.F.R. § 178.23(b)(2).

The court will file a judgment in favor of respondents and against John Benjamin.