**Simon PERRI, Jr., d/b/a Perri Jewelers, Petitioner/Appellant,**

v.

**DEPARTMENT OF THE TREASURY; BUREAU OF ALCOHOL, TOBACCO AND FIREARMS, Respondent/Appellee.**

No. 80–5036.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 9, 1980.

Decided Feb. 2, 1981.

Rehearing and Rehearing En Banc Denied April 2, 1981.

David T. Hardy, Sando & Hardy, Tucson, Ariz., for petitioner–appellant.

# 1334

Virginia A. Mathis, Asst. U. S. Atty., Tucson, Ariz., for respondent–appellee; Vince Galbraith, San Francisco, Cal., Linda A. Drake, Tucson, Ariz., on brief.

Before GOLDBERG,* WRIGHT and BOOCHEVER, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

## INTRODUCTION

The district court affirmed the Bureau of Alcohol, Tobacco and Firearms' (BATF) revocation of Simon Perri's license to sell firearms for willfully selling firearms to a felon and for falsifying records of firearm sales in violation of 18 U.S.C. §§ 922(b)(5), (d)(1), and (m) (1976). We affirm.

## FACTS

The Gun Control Act of 1968, 18 U.S.C. §§ 921 et seq., prohibits a licensed firearms dealer (1) from selling any firearm or ammunition unless the licensee records the name of the purchaser, 18 U.S.C. § 922(b)(5)[1]; (2) from selling to a felon, 18 U.S.C. § 922(d)(1)[2]; and (3) from knowingly making a false entry in his records, 18 U.S.C. § 922(m).[3]

The BATF employed Anthony Demara as an informant to investigate licensed firearm dealers in southern Arizona. Demara, a convicted felon, was a prohibited purchaser under the Act of 1968.

On February 8, 1977 Demara entered Perri Jewelers and expressed interest in a Smith & Wesson Model 19 revolver. Perri advised him he must first show a driver's license and answer "no" to questions on a federal form. The first question asked if the purchaser was under indictment for or had been convicted of a crime punishable by imprisonment for more than one year. Perri said he could not sell the gun if Demara answered "yes" to any question.

When Perri told Demara to read the form and asked if he had a felony conviction, Demara replied he could not sign the form. Perri said Demara could not buy the gun but another person could for his own use, but not if he said it was for Demara.

Demara responded, "but I want it." Perri replied, "but if he wants to give it to you, well that's another matter, but a person who writes yes, can't."

Demara left and returned with Morris Reyna, a state law enforcement officer, using the name "Jose Martinez" and posing as Demara's brother. Demara identified the gun in which he was interested and told Reyna, "he says that you gotta sign for me, I can't sign." Perri replied, "You can't sign for nobody. You can't sign for another guy. He has to buy it for his own use."

After discussing guns and prices, Reyna said Demara "wants the gun, and uh I'll make up that form or whatever." Perri responded Reyna could buy it only for himself, "if you buy it for yourself, if you're not

---

* Senior Circuit Judge, Fifth Circuit.

1. 18 U.S.C. § 922(b)(5)
 (b) It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver–
 (5) any firearm or ammunition to any person unless the licensee notes in his records, required to be kept pursuant to section 923 of this chapter, the name, age, and place of residence of such person if the person is an individual, or the identity and principal and local places of business of such person if the person is a corporation or other business entity.

2. 18 U.S.C. § 922(d)(1)
 (d) It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or other-

wise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person–
 (1) is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year.

3. 18 U.S.C. § 922(m)
 (m) It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector knowingly to make any false entry in, to fail to make appropriate entry in, or to fail to properly maintain, any record which he is required to keep pursuant to section 923 of this chapter or regulations promulgated thereunder.

a felon, well then you can buy it . . . But if you buy it for another guy you tell me, I don't want no part of it."

Demara offered to pay, but Perri refused and told Reyna to pay. The receipt and firearm record were made out in Reyna's assumed name, but Perri gave Demara the change and Demara departed with the gun.

Demara, accompanied by Michael Click, a state law enforcement officer, entered the store a second time a week later. He told Perri he wanted a gun for his wife. When Perri asked if he were going to buy, Demara replied, "I can't, I can't."

Demara said he needed a small gun for his wife because "that nineteen I bought, man, she can't handle it." He also indicated to Mrs. Perri that he wanted ammunition.

Click completed the form to indicate he was the transferee. The receipt, firearm record, and ammunition record were completed in Click's assumed name.

Demara paid the price, took the change, gun, ammunition, and receipt and left the store.

## DISCUSSION

### I. Standard of Review

After an administrative hearing, the BATF revoked Perri's firearm license for willfully selling guns to a felon and for falsifying records by not recording Demara's name as purchaser. The district court conducted a de novo review of the administrative record and affirmed the revocation.

18 U.S.C. § 923(f)(3)[4] requires the district court to undertake de novo review of the administrative decision. *Stein's Inc. v. Blumenthal*, No. 79–1766 slip op. (7th Cir., September 10, 1980).[5] The Seventh Circuit considered the legislative history of this provision and concluded

Congress intended to afford the district court the discretion to receive additional evidence to be considered along with the administrative record when some good reason to do so either appears in the administrative record or is presented by the party petitioning for judicial review . . . . Consideration of judicial economy suggests that trial anew of factual matters already litigated should be avoided unless substantial doubt infects the agency's findings of fact.

*Stein's* slip opinion at 7.

 We adopt this standard. Applying it to this case, we conclude the district court did not abuse its discretion in ruling without an evidentiary hearing. The court expressed its intention to avoid a repetitive hearing. It invited new evidence and received additional affidavits. At the close of the hearing, the court asked whether the case was submitted for *all* purposes: "both the consideration of the summary judgment; and then, if those are denied, consideration of the court's findings in the matter." Both attorneys responded affirmatively.

The court's factual findings, though based on a written record, will not be disturbed unless clearly erroneous. *Id. International Association of Machinists & Aero-*

---

**4.** Some courts apply a "substantial evidence" review to BATF decisions. *See Lewin v. Blumenthal*, 590 F.2d 268, 269 (8th Cir. 1979). The majority conclude the statute requires de novo review of the Secretary's decision. *See Stein's Inc. v. Blumenthal*, No. 79–1766, slip op. (7th Cir., September 10, 1980) and cases cited therein.

**5.** 18 U.S.C. § 923(f)(3)

If after a hearing held under paragraph (2) the Secretary decides not to reverse his decision to deny an application or revoke a license, the Secretary shall give notice of his decision to the aggrieved party. The aggrieved party may at any time within sixty days after the date notice was given under this paragraph file a petition with the United States district court for the district in which he resides or has his principal place of business for a judicial review of such denial or revocation. In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding. If the court decides that the Secretary was not authorized to deny the application or to revoke the license, the court shall order the Secretary to take such action as may be necessary to comply with the judgment of the court.

space Workers, District Lodge No. 50, Local Lodge No. 389 v. San Diego Marine Construction Corp., 620 F.2d 736, 737 (9th Cir. 1980). We review freely questions of law. Fed.R.Civ.P. 52(a); Vesey v. United States, 626 F.2d 627, 629 (9th Cir. 1980).

## II. Violation of the Gun Control Act

The Gun Control Act makes it unlawful for a licensed dealer to falsify records of purchasers and to sell to one he knows or has cause to believe has been indicted for or convicted of a crime which carries punishment of more than one year. 18 U.S.C. §§ 922(b)(5), (d)(1), (m).

27 C.F.R. § 178.124(c) lists the information required of a purchaser before a licensee may sell to him. It includes certification by the transferee that he is not prohibited by the Act from receiving a firearm. The regulation concludes "if satisfied that the transferee is lawfully entitled to receive the firearm, [the transferor] shall sign and date the form."

One purpose of the Act is to "keep firearms away from the persons Congress classified as potentially irresponsible and dangerous." Barrett v. United States, 423 U.S. 212, 218, 96 S.Ct. 498, 502, 46 L.Ed.2d 450 (1976). Prohibiting sham or "strawman" purchases serves this purpose. This occurs when a lawful purchaser buys for an unlawful one. This court has said that a dealer who sells a gun knowing, or with reason to know, it is for an unlawful possessor, violates the Act. See United States v. Camacho, 528 F.2d 464 (9th Cir.), cert. denied sub nom. Raygoza v. United States, 425 U.S. 995, 96 S.Ct. 2208, 48 L.Ed.2d 819 (1976).

### a. Firearm Sales

█ Perri argues (1) the first transaction was a sale to Reyna, a lawful purchaser, not to Demara, a felon and (2) he had no notice Demara was the real purchaser in the second transaction.

The district court found Perri had reasonable cause to believe that both sales were to Demara, who was a known felon.

In the first sale, Demara gave the money to Reyna, received the change, and left with the gun. Reyna's participation was limited.

He did not select the gun, asked few questions, answered a few, signed the form and paid the price.

In the second transaction, Demara selected the gun, paid the money, received the weapon and took the change, indicating that he could not sign the form. The undercover agent did no more than complete the registration form.

On this evidence, the court's findings were not clearly erroneous.

### b. Willful Violation

█ To establish grounds for revocation of a license, the government must demonstrate a willful violation of the Act. That is established when a dealer understands the requirements of the law, but knowingly fails to follow them or was indifferent to them. Lewin v. Blumenthal, 590 F.2d 268, 269 (8th Cir. 1979); Shyda v. Director, Bureau of Alcohol, Tobacco & Firearms, 448 F.Supp. 409, 415 (M.D.Pa.1977).

Perri argues he could not willfully violate a doctrine (the "strawman" doctrine) of which he has never been informed officially. The district court found Perri knew a strawman transaction would violate the Act.

On February 8, Perri told Demara he would refuse to sell a firearm to a person who stated he was buying it for Demara. And, at the administrative hearing, Perri testified he would refuse to sell a firearm if he knew a qualified buyer was buying a firearm for a prohibited person.

Based on this record, we cannot say the district court's findings were clearly erroneous.

### Defenses

### a. Entrapment

█ Perri argues the government agent entrapped him into selling firearms to Demara. We need not decide whether the entrapment defense is available in a license revocation proceeding because it could not apply here.

The test is whether government agents "implanted" in the mind of an innocent

person the disposition to commit an unlawful act. *United States v. Russell*, 411 U.S. 423, 435, 93 S.Ct. 1637, 1644, 36 L.Ed.2d 366 (1973). Merely affording the opportunity for its commission is not enough. *United States v. Valenzuela*, 596 F.2d 824, 827 (9th Cir.), *cert. denied sub nom. Lizarraga v. United States*, 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979). The district court found the idea to sell firearms illegally originated with Perri.

On February 8, Perri suggested to Demara how Demara could get a firearm if he could not answer "no" to the questions on the form. Perri said another person could buy for himself, "[b]ut if he wants to give it to you, well that's another matter." Later, Perri told Reyna he could buy for himself, "[b]ut if you buy it for another guy . . . you tell me, I don't want no part of it."

The district court could reasonably infer that Perri was suggesting a means by which he could sell the firearms to an illegal purchaser.

### b. *Exemption*

Perri contends the sales to the undercover agents fall within the exemption for the transportation, shipment, receipt, or importation of any firearm imported, sold, or shipped to the United States or any department or agency thereof. 18 U.S.C. § 925(a)(1).

This subsection does not exempt a sale of firearms through an undisclosed under-cover agent of the United States. *United States v. Brooks*, 611 F.2d 614 (5th Cir. 1980). To excuse a dealer's willful violation of the Act by selling to an unlawful purchaser simply because the government ultimately receives the firearm would circumvent the Act in a way Congress did not intend. *See United States v. White*, 451 F.2d 696, 699 (5th Cir. 1971), *cert. denied*, 405 U.S. 998, 92 S.Ct. 1268, 31 L.Ed.2d 468 (1972).

If Perri *knew* the purchaser was a government agent and received a statement from the latter's agency that the firearm would be used for official business, the transaction might fall within the exemption. *See Brooks, supra*, 611 F.2d at 618. Those were not the facts here.

### c. *Freedom of Information Act*

Perri argues the revocation of his license is precluded by the Freedom of Information Act, 5 U.S.C. § 552(a)(1) which states

> Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner . . . be adversely affected by, a matter required to be published . . . and not so published.

Perri argues the government was required to publish the "strawman" doctrine and, since it did not, he cannot be adversely affected by it.

Assuming arguendo that publication was required,[6] the language of the statute precludes reliance on the failure to publish if one has actual notice of the agency policy. *Central Arkansas Auction Sale, Inc. v. Bergland*, 570 F.2d 724, 728 n.3 (8th Cir.), *cert. denied* 436 U.S. 957, 98 S.Ct. 3070, 57 L.Ed.2d 1121 (1978). Perri had notice of the "strawman" doctrine by his comments that another person could not buy a firearm if he said it was for Demara, but could buy for his own use.

### CONCLUSION

The district court correctly found Perri willfully violated the Gun Control Act of 1968. The license revocation is affirmed.

---

**6.** Although we have concluded that Perri was not prejudiced, we believe that the Bureau could improve its purchase forms as well as otherwise give more adequate and clear notice of agency policy.