# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THE GENERAL STORE, INC.,
       *Plaintiff-Appellant,*

v.

RICHARD VAN LOAN, Director of
Industry Operations, Seattle Field
Division, Bureau of Alcohol
Tobacco and Firearms, ATF,
       *Defendants-Appellees.*

No. 07-35417

D.C. No.
CV-06-00103-FVS

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Fred L. Van Sickle, District Judge, Presiding

Argued and Submitted
October 22, 2008—Seattle, Washington

Filed December 31, 2008

Before: Barry G. Silverman, M. Margaret McKeown and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge McKeown

16879

**COUNSEL**

Richard E. Gardiner (argued), Fairfax, Virginia, for appellant.

James A. McDevitt, U.S. Attorney, Rolf H. Tangvald (argued), Assistant U.S. Attorney, Spokane, Washington, for appellee.

**OPINION**

McKEOWN, Circuit Judge:

The General Store appeals the district court's grant of summary judgment upholding the revocation of The General Store's federal firearms dealer license for willful violations of federal and state firearms laws. This appeal gives us occasion, following the Supreme Court's decision in *Safeco Insurance Company of America v. Burr*, 551 U.S. __, 127 S. Ct. 2201 (2007), to consider the definition of "willfully" in the Gun Control Act of 1968, codified at 18 U.S.C. §§ 921-930. We hold that the violations were willful and therefore affirm the revocation of The General Store's federal firearms license.

**BACKGROUND**

The General Store is an aptly named retailer in Spokane, Washington. The General Store maintains a federal firearms

dealers license in order to sell, among its many wares, firearms and ammunition.

The Gun Control Act of 1968 and related regulations impose certain requirements on federal firearms licensees. Two provisions are pertinent to this appeal. First, the Gun Control Act specifies record keeping requirements, including maintaining "such records of importation, production, shipment, receipt, sale, or other disposition of firearms at [the] place of business for such period, and in such form, as the Attorney General may by regulations prescribe." 18 U.S.C. § 923(g)(1)(A). The regulations, in turn, prescribe that licensed firearms dealers must "enter into a record each receipt and disposition of firearms." 27 C.F.R. § 478.125(e). The regulations include a form for the record—commonly called an Acquisition and Disposition Record—that requires specific information be gathered and recorded. *See id.* Second, licensed firearms dealers may not conduct transactions that violate state law. 18 U.S.C. § 922(b)(2). For example, Washington law requires that firearms dealers send a copy of all handgun applications "to the chief of police of the municipality or the sheriff of the county of which the purchaser is a resident." Wash. Rev. Code § 9.41.090(5). Under the licensing provisions of the Gun Control Act, the Attorney General has the authority to "revoke any license issued under this section if the holder of such license has willfully violated" any provision of the Act or the related regulations. 18 U.S.C. § 923(e).

The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), as well as state officials, periodically sends letters to all firearms dealers with information about federal and state laws and instructions for compliance. Two such letters preceded the violations at issue here. In November 1998, the ATF issued an Open Letter to All Washington Federal Firearms Licensees regarding compliance with the permanent provisions of the Brady Law, 18 U.S.C. § 922(t). The letter instructed licensees "to contact the chief law enforcement

officer in the jurisdiction of the purchaser's residence, in accordance with State law requirements" to conduct background checks for handgun transactions. An undated follow-up letter, labeled a "Correction Notice," clarified a point about concealed pistol licenses and reaffirmed the Brady Act requirement that: "[l]icensees should continue to contact the chief law enforcement officer in the jurisdiction of the purchaser's residence to request a background check for handgun purchasers who do not have any concealed pistol license."

In 2000, the ATF inspected The General Store and issued a Report of Violations. The ATF cited The General Store for three separate record keeping violations and, most notably, one violation of the receipt and disposition requirement, 27 C.F.R. § 478.125(e).[1] The subsection (e) violation was because "[o]ne firearm acquisition and 185 dispositions were not recorded . . . [l]icensee used sale date, not actual transfer date for dispositions recording some dispositions prior to actual transfer . . . [and] [l]icensee failed to record actual date of receipt of firearms." The ATF instructed The General Store to "establish controls to ensure all future entries are correct" no later than May 19, 2000. Following the inspection, the ATF held a warning conference on June 16, 2000, in which representatives met with William Barany, The General Store's president, "to discuss the manner in which [The General Store] plan[s] to prevent these violations from re-occurring."

The ATF next inspected The General Store in 2001 and issued a Report of Violations on October 15, 2001. The ATF cited The General Store for violations of 27 C.F.R. § 478.44, § 478.99, § 478.124, and § 478.125(e). Significantly, there was a "Repeat Violation" of § 478.125(e) for one unlogged firearm that was leaning against The General Store's counter;

---

[1]The ATF's Report of Violations cites to 27 C.F.R. § 178.124 and § 178.125; the ATF regulations have since moved from 27 C.F.R. § 178 *et seq.* to 27 C.F.R. § 478 *et seq.* without change.

it was a customer's gun obtained for repair. The ATF required the following corrective action:

> Immediately record all acquisition information on firearms that have remained on premises overnight. Implement internal controls as was discussed during the June 16, 2000 warning conference. Firearms acquired for gunsmithing, repairs, sights, or any other reason should be recorded by some one [sic] or in some way so that firearms returned or otherwise disposed on a different business day can be recorded, as required by the Gun Control Act.

After the 2001 inspection, The General Store began using a commercially-printed "Firearms Repair Log" to track firearms acquired for repair. The instruction to "BE SURE TO LOG IN ALL FIREARMS RECEIVED FOR REPAIR AND LOG THEM OUT ON DELIVERY" is written in large font diagonally across the front cover of the Firearms Repair Log. In smaller font, at the bottom of the front cover, is another written instruction:

> IMPORTANT DELIVERY INFORMATION:

> If any firearm logged into this Gunsmith's Firearms Repair Log is delivered to anyone other than the person who brought it in for repair, an entry MUST be made in your permanent Firearms Acquisition and Disposition Book ("Bound Book"), and a Form 4473 filled out and filed just as though the gun had been sold. Note in the "Date Returned" column of this book for the gun being delivered to see the entry in the Acquisition and Disposition Book for the person delivered to. See the example on the back cover of this Repair Log.

The ATF inspected The General Store yet again in January 2003. Finding more violations, Richard Van Loan ("Van

Loan"), Director of Industry Operations for the Seattle Field Division of the ATF, issued a Notice of Revocation of The General Store's federal firearms license on August 6, 2004. The General Store received an administrative hearing in early 2005. Van Loan issued the Final Notice of Revocation of Firearms License, with his findings and conclusions, on February 16, 2006. Van Loan based the final revocation on the following five violations:

(1) Willful violation of 27 C.F.R. § 478.125 for failure to adequately maintain an Acquisition and Disposition Record for firearms acquired for repair.

(2) Willful violation of 18 U.S.C. § 923(g)(1) and 27 C.F.R. § 478.125 for failure to fully record the "source" of acquired firearms.

(3) Willful violation of 18 U.S.C. § 923(g)(1) and 27 C.F.R. § 478.125 for failure to log eighty missing or stolen firearms in its Acquisition and Disposition Record.

(4) Willful violation of 18 U.S.C. § 923(g)(1) and 27 C.F.R. § 478.125 for failure to log seventeen firearms that were lost or stolen, then ultimately recovered and resold.

(5) Willful violation of 18 U.S.C. § 922(b)(2) for failure to comply with state law, specifically Revised Code of Washington § 9.41.090, which requires the dealer to send a copy of all handgun applications to the chief of police or sheriff of the purchaser's place of residence.

The General Store filed a timely petition for "de novo judicial review" in district court as provided by 18 U.S.C. § 923(f)(3). The General Store requested that Van Loan stay

the revocation pending judicial review pursuant to 18 U.S.C. § 923(f)(2) and 27 C.F.R. § 478.78; Van Loan denied the request. On cross-motions for summary judgment, the district court upheld the first and fifth violations, and the revocation of The General Store's license.

## ANALYSIS

### I.  DEFINITION OF "WILLFULLY" UNDER THE GUN CONTROL ACT

**[1]** In evaluating The General Store's admitted violations, the district court looked to the definition of "willfully" set out in *Perri v. Department of the Treasury, Bureau of Alcohol, Tobacco, and Firearms*: "when a dealer understands the requirements of the law, but knowingly fails to follow them or was indifferent to them." 637 F.2d 1332, 1336 (9th Cir. 1981). The General Store argues that this interpretation is inconsistent with the definition of "willfully" recently articulated by the Supreme Court in *Safeco.* 127 S. Ct. at 2208-09.

**[2]** *Safeco* considers "willfully" in the context of the Fair Credit Reporting Act. The Court reiterated that "[w]here willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well[.]" 127 S.Ct. at 2208. This clear directive leaves us to decide whether there is a distinction between "reckless disregard" as articulated in *Safeco* and the term "indifference" as used in *Perri*. Although at oral argument The General Store's counsel likened this distinction to considering how many angels fit on the head of a pin, parsing this language does not require us to make such a metaphysical judgment. We interpret "indifference" as used in *Perri* to mean "plain indifference," which is indistinguishable from a "reckless" violation.

Although *Perri*'s recitation of the indifference standard did not include the modifier "plain," the two cases referenced for

support cite "plain indifference" and, in the context of *Perri*, it is clear that "indifference" did not mean a mere mistake or negligence. *See* 637 F.2d at 1336 (citing *Lewin v. Blumenthal*, 590 F.2d 268, 269 (8th Cir. 1979); *Shyda v. Director, Bureau of Alcohol, Tobacco & Firearms*, 448 F. Supp. 409, 415 (M.D. Pa. 1977)). Instead, "indifference" as used in *Perri* is the same as "reckless disregard," which means "[c]onscious *indifference* to the consequences of an act." Black's Law Dictionary 506 (8th ed. 2004) (emphasis added).

**[3]** Five circuits, in addition to ours, have similarly held that a violation of the Gun Control Act requires a willful violation that is "a deliberate, knowing, or reckless violation of its requirements." *Armalite Inc. v. Lambert*, 544 F.3d 644, 647 (6th Cir. 2008); *RSM, Inc. v. Herbert*, 466 F.3d 316, 321 (4th Cir. 2006); *Willingham Sports, Inc. v. ATF*, 415 F.3d 1274, 1277 (11th Cir. 2005); *Stein's Inc. v. Blumenthal*, 649 F.2d 463, 467 (7th Cir. 1980); *Lewin v. Blumenthal*, 590 F.2d 268, 269 (8th Cir. 1979). In *Armalite*, the Sixth Circuit recently noted that the classic definition of willfulness— knowing or reckless, but not negligent—is consistent with the "standard civil usage" reference in *Safeco*. *Armalite*, 544 F.3d at 648 (internal quotation marks and citation omitted). There is no distinction of consequence between the definitions of "willfully" in *Perri* and *Safeco*. Therefore, the district court did not err by applying the *Perri* standard to The General Store's revocation proceeding.

The General Store also urges us to disregard *Perri* because, when *Perri* was decided, § 923(e) did not include a requirement of willfulness. Congress added the willfulness proviso in the Firearms Owners Protection Act of 1986. Pub. L. 99-308, 100 Stat. 449 (1986). Thus, according to The General Store, the legislative history dictates that "willfully" must be interpreted to mean purposeful, intentional conduct. We are not persuaded by this argument. *Perri* used the term "willfully," so the statutory change simply conformed the statutory language to our case law. Because the statute as amended is

unambiguous, there is no need to look beyond the face of the statute itself, *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002), interpreted in light of the traditional standard that applies where "willfulness is a statutory condition of civil liability." *Safeco*, 127 S.Ct. at 2208.

## II.  WILLFUL VIOLATION OF THE GUN CONTROL ACT

The General Store argues that its admitted violations of 27 C.F.R. § 478.125(e) and 18 U.S.C. § 922(b)(2) were not "willful" and therefore cannot be a basis for revocation of its firearms license. Although we affirm the district court's decision that both violations were willful, one willful violation would be sufficient, as a single willful violation is grounds for upholding the revocation.

The regulation requires licensed firearms dealers to "enter into a record each receipt and disposition of firearms." 27 C.F.R. § 478.125(e). The General Store admits that it violated this requirement by failing to record firearms obtained and transferred for repair in its Acquisition and Disposition Record. The General Store argues, however, that these violations were not willful because it made a good faith effort to follow ambiguous instructions received from the ATF.

These instructions, however, were not so ambiguous as The General Store would have us believe. Following inspections in 2000 and 2001, ATF cited The General Store for violations of § 478.125(e). Both citations instructed The General Store to record acquisitions and dispositions of firearms for repair "as required by the Gun Control Act" with reference to § 478.125(e), which contains specific instructions on what information must be recorded. Nothing was unclear in the citations.

**[4]** Nonetheless, The General Store points to two supposed ambiguities in the instructions it received for complying with its record keeping duties. First, the citation following the 2001

inspection instructed The General Store to record firearms acquired for repair "in some way." On its own, this remark may not be the clearest directive, but it is not ambiguous when combined with the instruction to record firearms "as required by the Gun Control Act" and § 478.125(e). Section 478.125(e) provides specific information about recording acquisitions that removes any ambiguity about The General Store's record keeping duties.

Second, in an apparent attempt to comply with its record keeping duties following the 2001 inspection, The General Store began using a commercially-printed Firearms Repair Log to track firearms acquired for repair. The Firearms Repair Log has two instructions on its cover that the General Store views as ambiguous. "BE SURE TO LOG IN ALL FIRE- ARMS RECEIVED FOR REPAIR AND LOG THEM OUT ON DELIVERY" is printed in large type. The cover also warns,

> If any firearm logged into this Gunsmith's Firearms Repair Log is delivered to anyone other than the person who brought it in for repair, an entry MUST be made in your permanent Firearms Acquisition and Disposition Book ("Bound Book"), and a Form 4473 filled out and filed just as though the gun had been sold.

The General Store argues that this warning paragraph modifies the "log in all firearms" instruction, which therefore applies only to firearms delivered to "anyone other than the person who brought it in for repair."

The General Store's reliance on the Firearms Repair Log is misplaced. The General Store must follow the record keeping requirements "as the Attorney General may by regulations prescribe," 18 U.S.C. § 923(g)(1)(A), not the instructions printed on a commercial publication that it chooses to use.

**[5]** But, in any event, the instructions in the Firearms Repair Log are not ambiguous. The two separate instructions are independent: the instruction to "log in all firearms" is printed in larger font diagonally across the page. The warning, which is separate and contained in smaller print at the bottom of the page, by its own terms applies only to firearms that have already been logged into the Firearms Repair Log; the warning does not modify the obligation to log the firearms in the first instance. In not recording firearms acquired for repair, The General Store failed to follow the clear instructions on the Firearms Repair Log.

**[6]** Finally, we question the consistency of The General Store's good faith effort to comply with § 478.125(e). By beginning to use the Firearms Repair Log after the 2001 inspection, The General Store demonstrated some effort to meet its obligations. But § 478.125(e) requires licensees to *maintain*, not just start, accurate firearms logs. An initial use of a log in 2001, followed by two years of inaccurate or incomplete records leading up to the 2003 inspection, demonstrates The General Store's indifference to its legal obligation. Therefore, the district court did not err in finding that The General Store willfully violated § 478.125(e).

The district court also determined that The General Store violated § 922(b)(2), which prohibits firearms sales that violate state law, by failing to comply with a Washington requirement that firearms dealers must send a copy of all handgun applications to the police or sheriff of the applicant's place of residence. *See* Wash. Rev. Code § 9.41.090(5). Instead of following this requirement, The General Store submitted copies of handgun applications to the Spokane Police Department, regardless of the applicant's residence. The General Store contends that its admitted violation of § 922(b)(2) was not willful because The General Store did not know its obligation and had "reasonable cause to believe that the purchase . . . would not be in violation of such State law." 18 U.S.C. § 922(b)(2).

**[7]** The General Store does not dispute that the form it used for processing handgun applications unambiguously states, "[s]end this original to the Chief of Police of the municipality or the Sheriff of the county of which the purchaser is a resident." In addition, the district court found that The General Store received written notice of the requirement in the letters sent by the ATF in 1998.[2] The evidence supports the district court's determination that The General Store knew its obligations under § 922(b)(2).

**[8]** The General Store also argues that it had "reasonable cause to believe that the purchase . . . would not be in violation of such State law," 18 U.S.C. § 922(b)(2), because neither the ATF nor the Spokane Police Department informed The General Store that it was sending the forms to the wrong official. This argument is not persuasive. The dealer, not the ATF or the police department, bears the reporting obligation. The ATF's failure to cite every violation during prior inspections—particularly when faced with a large number of missing firearms—and the Spokane Police Department's inaction do not demonstrate a good faith belief given The General Store's repeated failure to follow a clear duty. The district court did not err in finding that The General Store violated § 922(b)(2).

## III.   JURISDICTION TO STAY REVOCATION

Finally, The General Store argues that 18 U.S.C. § 923(f)(2) required Van Loan to stay revocation of The Gen-

---

[2]The General Store argues that there is no evidence it received these letters. The district court credited Van Loan's determination—based on the common law mailbox rule—that The General Store received the letters. Significantly, The General Store has never denied receiving the letters. *Cf. Schikore v. BankAmerica Supplemental Retirement Plan*, 269 F.3d 956, 964 & n.7 (9th Cir. 2001) (noting a "specific factual denial of receipt," under *Nunley v. City of Los Angeles*, 52 F.3d 792, 792-93 (9th Cir. 1995), may in some contexts be sufficient to rebut a presumption of receipt based on the mailbox rule). The district court's factual finding is not clear error.

eral Store's federal firearms license pending judicial review. Because we affirm the district court's revocation of The General Store's license, this contention is moot.

AFFIRMED.