NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0624n.06

No. 08-3930

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED
Sep 01, 2009
LEONARD GREEN, Clerk**

LARRY W. GARNER,   )
                   )
    Petitioner-Appellant,   )    ON APPEAL FROM THE UNITED
                   )    STATES DISTRICT COURT FOR
    v.   )    THE NORTHERN DISTRICT OF
                   )    OHIO
MARCIA F. LAMBERT,   )
                   )    **O P I N I O N**
    Respondent-Appellee.   )
                   )
_____  )

Before:  MERRITT, COOK, and WHITE, Circuit Judges.

**WHITE, Circuit Judge.**  Petitioner Larry Garner, an Ohio firearms auctioneer, seeks reversal of the Bureau of Alcohol, Tobacco, Firearms, and Explosives's (ATF) revocation of his federal firearms license (FFL).  Garner filed a petition for review with the Northern District of Ohio, which granted summary judgment for respondent Marcia Lambert, the Director of Industry Operations for the ATF's Columbus Field Division.  Garner appeals, and we AFFIRM.

**I**

Garner was originally issued his federal firearms license in 1982.  As a firearms licensee, he was required by the Gun Control Act of 1968 (GCA), as amended, to comply with a number of record-keeping requirements administered by the ATF.  *See* 18 U.S.C. § 923.  In accordance with the GCA and the applicable regulations, Garner was also subject to regular compliance inspections of his premises.

In April 1995, the ATF inspected Garner's premises and cited him for three types of violations, including eight instances of failing to properly complete ATF Form 4473 prior to disposition of a firearm.[1] The Report of Violations (ROV), which contained Garner's signature acknowledging receipt, included instructions for corrective action for each cited violation. A subsequent inspection in November 1996 found no violations. However, the ATF conducted another inspection in May 2002, after which another ROV was issued citing Garner for seven violations, including failure to properly complete Form 4473 and failure to maintain required records at the licensed premises. After the inspection, Garner signed a statement acknowledging that the pertinent GCA regulations were "thoroughly explained" to him by the ATF inspector and "any questions . . . were answered." A warning letter was subsequently sent to Garner by certified mail, informing him that repeat violations of those found at the May 2002 inspection "will be viewed as willful, and may result in the revocation of your license."

The ATF conducted its next inspection in April 2004. This inspection revealed several violations, including the failure to execute a Form 4473 before a firearms transaction, the failure to accurately complete Form 4473s in 213 out of the 436 reviewed forms, and the failure to document all information in the Acquisition and Disposition Record (A&D Record). In February 2005, the ATF sent another warning letter to Garner, which included a copy of the ROV that was issued at the time of the April 2004 inspection. The letter stated that "[a]s a result of the recently cited violations, it is important that we have a meeting with you to discuss the violations found." According to the letter, the meeting would include discussions of the reasons for the violations, the applicable legal

---

[1]Form 4473 is a transaction record that licensees are required to keep "to verify that all over-the-counter transactions involve qualified purchasers." *Armalite, Inc. v. Lambert*, 544 F.3d 644, 645 (6th Cir. 2008); *see* 27 C.F.R. § 478.124.

2

requirements, and the steps to be taken to ensure Garner's future compliance. The ATF reminded Garner of the importance of complying with the GCA and applicable regulations, and stated that "[a]ny violations, either repeat or otherwise, could be viewed as willful and may result in the revocation of [his] license." A meeting was held in March 2005, at which the April 2004 citations were discussed. In a letter memorializing the meeting, the ATF again informed Garner that future violations could be viewed as willful and could result in license revocation, and that he should anticipate a further inspection in order to ensure his compliance.

The ATF conducted another inspection in 2006, and on May 4, 2006, another ROV was issued. This time, the ATF issued a Notice of Revocation of Garner's license. This Notice of Revocation contained six counts alleging willful violations of the GCA and applicable regulations; each count alleged repeat violations. For example, Count III alleged that the serial numbers in the A&D Record did not match the serial numbers on the Form 4473 in three instances of the twelve firearms transferred to an individual on September 17, 2005. This was alleged to be a repeat violation from April 2004, May 2002, and April 1995. Count VI alleged that Garner transferred two handguns to one non-licensee and three handguns to another non-licensee on January 1, 2005 without submitting or attaching the required ATF Form 3310.4 (Report of Multiple Sale). This was alleged to be a repeat violation from May 2002.

Garner, acting through counsel, requested an administrative hearing, which was held on June 26, 2007. The hearing officer found that each of the six counts alleged in the Notice of Revocation were proven, and that they were willful. The hearing officer determined that Garner "does seem plainly indifferent to his responsibilities under the Gun Control Act," and opined that there were "very few occasions where a Federal firearms licensee has had the benefit of so many opportunities

3

for improvement as has Mr. Garner." Following the hearing, the ATF served Garner with a Final Notice of Revocation, which set out the six statutory and regulatory violations and concluded that "the record in this case demonstrates that [Garner] is familiar with the requirements imposed upon Federal firearms licensees" and that he "has been plainly indifferent to, or has acted in purposeful disregard of, these requirements."

Garner filed a petition for de novo judicial review of the revocation of his license pursuant to 18 U.S.C. § 923(f)(3).[2] He contested the ATF's conclusions that he willfully violated applicable laws and regulations as to each of the six counts. Garner acknowledged the errors alleged in Counts III and VI but contended that such violations were "inadvertent, technical record-keeping errors which were not knowing or reckless." Garner also contended that the ATF unlawfully seized his Form 4473s, which formed the basis of Counts I-III, and that this evidence was therefore inadmissible.[3]

Lambert, as respondent, filed a motion for summary judgment arguing that the undisputed material facts established that Garner willfully violated the licensing provisions of the GCA. In response, Garner maintained that the seizure of the Form 4473s was unlawful and that he did not willfully violate any statute or regulation. On May 22, 2008, the district court granted Lambert's motion for summary judgment. *Garner v. Lambert*, 558 F. Supp. 2d 794 (N.D. Ohio 2008). The

---

[2] 18 U.S.C. § 923(f)(3) provides in pertinent part: "The aggrieved party may at any time within sixty days after the date notice was given under this paragraph file a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such denial or revocation. In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing held" to review the revocation.

[3] Garner separately filed a motion for declaratory relief requesting that his license's revocation be stayed pending judicial review, which respondent opposed and the district court denied.

4

court held that the Form 4473s were seized lawfully and were admissible, that Garner was aware of his legal obligations under the GCA, and that he willfully failed to comply with the violations alleged in Counts III and VI.[4]  The court entered judgment affirming the ATF's Final Notice of Revocation and ordered that Garner's FFL be revoked.  Garner appeals.

## II

A federal court reviewing the government's revocation of a federal firearms license may grant summary judgment "if no genuine issue of material fact exists about whether [the licensee] willfully violated an applicable statutory or regulatory provision." *Armalite*, 544 F.3d at 647.  We review de novo a district court's grant of summary judgment. *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006).  Factual evidence is to be viewed in the light most favorable to the non-moving party and all reasonable inferences must be construed in that party's favor. *See Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006).

## A.

Garner argues as a threshold matter that the ATF's 2006 seizure of all his Form 4473s, which constitute the evidence on which Counts I-III were based, was unlawful because the ATF inspector did not review all the Form 4473s at Garner's premises but rather seized the 4473s that he might want to look at, took them to his office to review, and returned them to Garner a week later.  Garner contends that such a seizure was not in accordance with the statute,[5] and that the records were

---

[4]The district court did not address the violations alleged in the other counts.

[5]18 U.S.C. § 923(g)(1)(B)(ii)(I) provides for the inspection or examination of the inventory and records of a licensed firearms dealer, without reasonable cause or a warrant, "for ensuring compliance with the record keeping requirements of this chapter . . . not more than once during any 12-month period."  18 U.S.C. § 923(g)(1)(D) states in part:

At the election of a licensed collector, the annual inspection of records and inventory

5

therefore inadmissible.  The district court rejected this argument, ruling that the seizure comported

with the applicable statute,[6] and that even if it did not, the records were still admissible.[7]

permitted under this paragraph shall be performed at the office of the Attorney General designated for such inspections which is located in closest proximity to the premises where the inventory and records of such licensed collector are maintained. *The inspection and examination authorized by this paragraph shall not be construed as authorizing the Attorney General to seize any records or other documents other than those records or documents constituting material evidence of a violation of law.* If the Attorney General seizes such records or documents, copies shall be provided the licensee within a reasonable time.

(Emphasis added.)  The provision allowing only the seizure of records and documents "constituting material evidence of a violation of law" was not in the Gun Control Act of 1968 when it was enacted, but was added by Congress in 1986 when it enacted the Firearms Owners' Protection Act (FOPA), Pub. L. No. 99-308, 100 Stat. 449 (1986).  *See* David T. Hardy, *The Firearms Owners' Protection Act: A Historical and Legal Perspective*, 17 Cumb. L. Rev. 585, 655 (1986/1987).

[6]Noting the first sentence of this subparagraph, the district court determined that the provision restricting the seizure of records and documents in § 923(g)(1)(D) applies only to "licensed collectors," and thus did not apply to Garner, a licensed dealer.

[7]Respondent claims that Garner consented to the ATF's seizure of the 4473s; Garner disagrees.  Whether there is valid consent is a fact-specific inquiry and is to be determined by considering the totality of the circumstances. *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc).  "While we review the determination of the ultimate question of whether there was consent *de novo*, we must afford due weight to the factual inferences and credibility determinations made by the district court." *United States v. Moon*, 513 F.3d 527, 536 (6th Cir. 2008).  Here, the district court expressly did not decide whether Garner consented to the seizure of the records. *See Garner*, 558 F. Supp. 2d at 802.  We do not decide this question either, though we note that there was no objection when the 4473s were removed, nor is there any indication in the record that the inspector was not acting in good faith when he removed them.

While there is support for Garner's view of the statute,[8] we need not decide the issue because even if the inspector's seizure of the 4473s to examine them off-site was contrary to § 923(g)(1)(D), it does not follow that the 4473s should have been excluded. In *United States v. Biswell*, 406 U.S. 311 (1972), the Supreme Court observed that "[i]t is . . . plain that inspections for compliance with the Gun Control Act pose only limited threats to the dealer's justifiable expectations of privacy." *Id.* at 316; *cf. United States v. Acklen*, 690 F.2d 70, 75 (6th Cir. 1982) (citing *Biswell* and holding that the pharmaceutical industry, like the firearms industry, is a pervasively regulated industry, and that "consequently pharmacists and distributors subject to the Controlled Substances Act have a reduced expectation of privacy in the records kept in compliance with the Act"). Garner's expectation of privacy in these 4473s was necessarily reduced. These are ATF forms that the GCA requires licensed firearms dealers to maintain solely for the government's benefit, and that are subject to ATF inspection. *See Armalite*, 544 F.3d at 645; 27 C.F.R. § 478.124. There is no question that the inspector was lawfully on the premises and that he lawfully inspected Garner's ATF records. Under such circumstances, these Form 4473s were properly considered in the administrative proceeding and by the district court.

---

[8]The Supreme Court has observed that "Congress ordinarily adheres to a hierarchical scheme in subdividing statutory sections" under which, "[t]o the maximum extent practicable," paragraphs are subdivided starting with "(1)" and subparagraphs are subdivided starting with "(A)." *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60-61 (2004). If this scheme is applied, the "paragraph" referred to in § 923(g)(1)(D) is § 923(g)(1), which includes § 923(g)(1)(B)(ii). The drafting history of this paragraph supports the interpretation that this sentence applies to dealers. *See* Stephen P. Halbrook, *Firearms Law Deskbook* § 3:9 (2008) (observing that § 923(g)(1) appeared as one long paragraph without any subparagraphs in an earlier version of the proposed legislation). And, the ATF's own regulation indicates that this provision also applies to inspections and examinations of a licensed dealer's premises. *See* 27 C.F.R. § 478.23(d).

**B.**

Having disposed of the evidentiary issue, we next determine whether Garner willfully violated the firearms laws and regulations. "The Attorney General may, after notice and opportunity for hearing, revoke any license issued under this section if the holder of such license has *willfully* violated any provision of this chapter or any rule or regulation prescribed by the Attorney General under this chapter . . . ." 18 U.S.C. § 923(e) (emphasis added). Because the government may revoke a license if a licensee willfully violates "any" such provision, rule, or regulation, "a single willful violation . . . suffices to revoke a firearms license." *Armalite*, 544 F.3d at 647. The ATF sustained six counts alleging Garner's willfully violating the GCA and applicable regulations. The district court only addressed two of these counts—Counts III and VI—and concluded, after conducting the required de novo review, that the ATF's decision revoking Garner's federal firearms license pursuant to each of the counts was authorized.

**1.**

Garner initially argues that the district court used an incorrect legal standard for willfulness. The district court relied in large part on this court's prior explanation of the willfulness requirement in *Appalachian Resources Development Corp. v. McCabe*, 387 F.3d 461 (6th Cir. 2004). Subsequent to our *Appalachian Resources* decision, the Supreme Court construed the term "willfully" as used in another statute, *see Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56-60 (2007), and Garner unsuccessfully argued to the district court that *Safeco*'s definition of "willfully" constituted an implicit overruling of *Appalachian Resources* and should govern. After the district court's decision, we decided *Armalite, Inc. v. Lambert*, which specifically analyzed the effect of *Safeco* on *Appalachian Resources*. *See Armalite*, 544 F.3d at 647-49. Garner argues on appeal that *Armalite*

8

adopted *Safeco*'s willfulness requirement and diverged from *Appalachian Resources*. Respondent contends that *Armalite* only "clarified the willfulness standard as set out in *Appalachian Res[ources]*, but did not discard it."

In *Armalite*, we discussed the GCA's willfulness requirement as it had been construed in *Appalachian Resources*:

> In *Appalachian Resources*, this court defined "willful" violations of the GCA in this way: "[W]here a licensee understands his or her legal obligations under the GCA, yet fails to abide by those obligations, his or her license can be denied or revoked on the basis that the dealer 'willfully' violated the GCA." 387 F.3d at 464. What this articulation of the standard leaves unclear is whether the "understand[ing]" that the licensee must have of its obligations under the GCA suffices by itself to establish the requisite mens rea for a violation or whether the violation itself still must be committed intentionally, knowingly or recklessly. One possibility is this: a dealer violates the statute when it (1) knows what its legal obligations are and (2) fails to comply with those obligations, whether that failure to comply was intentional, reckless or negligent. The other possibility is this: a dealer violates the statute when, with knowledge of what the law requires, it intentionally or knowingly violates the GCA's requirements or acts with plain indifference to them (i.e. recklessly violates them).

*Id.* at 647. *Armalite* clarified that "[w]e embrace the second interpretation." *Id.* It noted that this interpretation is consistent with the other circuit courts to have considered the issue—that "each of them has held that a willful violation of the GCA requires a deliberate, knowing or reckless violation of its requirements," and that not one has held "that a negligent violation of the statute suffices to establish a cognizable GCA violation." *See id.* at 647-48 (discussing cases).

Significantly, we observed in *Armalite* that "nothing in *Appalachian Resources* indicates that the panel meant to break from this consensus" existing throughout the circuits. *Id.* at 648. As for *Safeco*'s impact, we determined that

> in defining willful violations of the GCA, *Appalachian Resources* did not signal that it was breaking from the background principle against which Congress enacted the

statute—namely the "standard civil usage" of the word "willfully." *Safeco Ins. Co. of Am. v. Burr*, [551 U.S. 47,] 127 S. Ct. 2201, 2209 (2007). "[W]here willfulness is a statutory condition of civil liability, [the Supreme Court has] generally taken it to cover not only knowing violations of a standard, but reckless ones as well." *Id.* at 2208. *Appalachian Resources* offers no indication that it meant to deviate from this classic definition of willfulness (and to sweep negligent violations of the statute within its coverage), and nothing in the statute offers any basis for thinking that Congress meant to do so either.

*Armalite*, 544 F.3d at 648. "In resolving this ambiguity in *Appalachian Resources*," we concluded that "the court did not mean to announce a new standard of willfulness . . . . A dealer 'willfully' violates the GCA when it intentionally, knowingly or recklessly violates known legal requirements." *Id. Armalite* lifted some fog that might have obscured *Appalachian Resources*'s "willfulness" requirement by making clear that *Appalachian Resources* is consistent with *Safeco* and with the cases from other circuits on which it had relied. *Armalite* did not say, as Garner contends, that *Appalachian Resources* is no longer good law.

As for the district court's application of the willfulness requirement in the instant case, the court could have been more precise at certain points of its discussion. To the extent the court did not make clear that negligence is insufficient to show willfulness, we reject its analysis. *See Garner*, 558 F. Supp. 2d at 804 ("Where, as here, the licensee admits that he understood his obligations and that he failed to abide by those obligations by committing the violation in question, the Court must find that he acted willfully."); *cf. Armalite*, 544 F.3d at 647 (noting that "the violation itself . . . must be committed intentionally, knowingly or recklessly," and rejecting the interpretation that a willful violation of the statute can be shown simply where a dealer "(1) knows what its legal obligations are and (2) fails to comply with those obligations"). Because the district court ultimately determined that Garner "acted with plain indifference to his obligations under the GCA, obligations of which

10

he was fully and completely cognizant," *Garner*, 558 F. Supp. 2d at 805, we are satisfied that the willfulness standard employed by the district court in considering the allegations contained in Count III was ultimately consistent with *Armalite*.

**2.**

We now review de novo the district court's grant of summary judgment based on its conclusion that Garner willfully violated federal firearms statutes and regulations as alleged in Count III. As to this count, the district court agreed with the ATF's determination that Garner willfully violated 18 U.S.C. § 923(g)(1)(A)[9] and 27 C.F.R. § 478.124(c)(4)[10] by incorrectly recording firearms' serial numbers on Form 4473s in three instances out of the twelve firearms transferred to one individual on September 17, 2005.

Based on our review of the record, we agree with the district court that Garner was "plainly indifferent to his obligations under the GCA, and therefore his violations were willful." *Garner*, 558 F. Supp. 2d at 806. The facts readily reveal Garner's plain indifference to his legal responsibilities to complete the 4473s properly. Garner was cited for a long string of violations involving his 4473s, stretching back more than ten years. Each time the ATF cited him, it attempted to impress upon him the importance of full compliance with the applicable legal requirements. Even after the ATF

---

[9]This subparagraph provides in pertinent part that "[e]ach licensed importer, licensed manufacturer, and licensed dealer shall maintain such records of importation, production, shipment, receipt, sale, or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe."

[10]This portion of the regulation states that "[t]he licensee shall identify the firearm to be transferred by listing on the Form 4473 the name of the manufacturer, the name of the importer (if any), the type, model, caliber or gauge, and the serial number of the firearm."

warned him on more than one occasion that he could lose his license if more violations were found, his violations persisted.

At the administrative hearing, Garner acknowledged the three discrepancies between the 4473s and the A&D Record that were alleged in Count III, but characterized these errors as either innocent transpositions or due to the difficulty with reading small serial numbers.[11] "It did happen," Garner testified, "but I can find that gun in my office anytime I want it or my wife can because we've got [the serial number] in four different places." This explanation that there are other sources for the information has been recognized as "irrelevant." *See Article II Gun Shop, Inc. v. Gonzalez*, 441 F.3d 492, 498 (7th Cir. 2006) ("Gun World tries to explain why each of its violations was immaterial—either because the information sought on a Form could be found on another form or because it could be discovered by talking to Gun World employees. . . . The revocation provision applies regardless of whether a firearms dealer's failure to comply with the Act actually results in illegal possession or usage of a firearm or an inability to track a firearm that has been sold."). And although Garner maintains that most of his 4473s were in compliance, "[p]lain indifference can be found even where nine times out of ten a licensee acts in accordance with the regulations, if he was plainly indifferent to the one-in-ten violation." *Am. Arms Int'l v. Herbert*, 563 F.3d 78, 87 (4th Cir. 2009).

Garner also testified regarding his general compliance with the applicable legal requirements:

> We do everything we can but that doesn't necessarily mean that somebody doesn't overlook something. I mean we do our very, very best but they're handled by a lot of people in a short period of time and somebody can overlook a line or something but we do everything.

---

[11]The hearing officer found these explanations to "occasionally [be] true," but that "this does not negate the requirement for accurate serial number information to be recorded."

12

> We don't willful – to me willfully means I intended to do it, ain't going to do it, just took a shortcut and handed out the gun, did whatever – we don't do that, absolutely not. We may make a mistake but we are not willfully doing anything wrong.

We recognize that Garner at one point attempted to improve his compliance by hiring additional part-time help, and we do not doubt that it can be demanding for licensees to comply fully with the many applicable requirements governing their business. However, the record also reveals Garner's pervasive history and tolerance of mistakes. A simple mistake does not on its own constitute willfulness. *See id.* (observing that "willfulness . . . does not demand perfection from licensees—it leaves room for the occasional incident of human error"). But at some point, a series of purported mistakes may evince a tolerance for errors and thus a plain indifference to the applicable statutory and regulatory requirements. The Fourth Circuit's discussion of this point is apt:

> To be sure, a single, or even a few, inadvertent errors in failing to complete forms may not amount to "willful" failures, even when the legal requirement to complete the forms was known. Yet *at some point*, when such errors continue or even increase in the face of repeated warnings given by enforcement officials, accompanied by explanations of the severity of the failures, one may infer as a matter of law that the licensee simply does not care about the legal requirements. *At that point*, the failures show the licensee's plain indifference and therefore become willful.

*RSM, Inc. v. Herbert*, 466 F.3d 316, 322 (4th Cir. 2006) (emphasis in the original); *accord Armalite*, 544 F.3d at 650 ("At some point, repeated negligence becomes recklessness[.]"). The precise point at which Garner's errors demonstrated his plain indifference is unclear, but given Garner's extensive history of not fully complying with the legal requirements applicable to his responsibilities to complete and maintain his Form 4473s, we are satisfied that this point had been reached in 2005 when the violations alleged in Count III took place. The ongoing pattern of errors with regard to

13

Garner's 4473s authorized the ATF as a matter of law to revoke Garner's license based on the willful violations identified in Count III. *See Armalite*, 544 F.3d at 650.[12]

## C.

Finally, Garner argues that under 18 U.S.C. § 923(f)(2), the revocation of his license should have been stayed while his petition for judicial review was pending. Because we affirm the revocation of his license, this issue is moot. *General Store, Inc. v. Van Loan*, 560 F.3d 920, 926 (9th Cir. 2009).

## III

The judgment of the district court is AFFIRMED.

---

[12]Because "a single willful violation . . . suffices to revoke a firearms license," *Armalite*, 544 F.3d at 647, we do not address the charges in the other counts and specifically do not consider the district court's discussion of the violations alleged in Count VI.